IN THE UNTIED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MAUREEN COFFMAN,                         )
                                         )
    Plaintiff,                  )  Civil No. 04-1327-PK
                                         )
  v.                                     )  FINDINGS AND
                                         )  RECOMMENDATION
JO ANNE B. BARNHART,                     )
Commissioner of Social Security,         )
                                         )
    Defendant.                  )

ALAN STUART
1020 S.W. Taylor, Suite 230
Portland, OR 97205

  Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

MICHAEL McGAUGHRAN
Regional Chief Counsel
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

  Attorneys for Defendant

PAPAK, Magistrate Judge:

Plaintiff Maureen Coffman seeks judicial review of the Social Security Commissioner's final decision denying her application for supplemental social security income (SSI) benefits under Title XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. § 1383(c). I recommend that the Commissioner's decision be affirmed and the case dismissed.

## BACKGROUND

Born in 1959, Coffman left school at the eleventh grade. Tr. 53, 81.[1] Between 1985 and 1995 she worked intermittently as a seamstress, nursing home assistant, fast food cook, veterinary assistant and drywaller or sheetrocker. Tr 87, 106.

Coffman states that she was first bothered by her lumbrosacral strain and hip pain on August 9, 1995. She sustained her initial injury on that date while working for her husband,[2] resulting in a worker's compensation settlement. Tr. 66-73. Coffman contends she has been disabled and unable to work because of these impairments since this incident. Tr. 15, 105. She filed for SSI on December 26, 2000, alleging an onset date of November 20, 2000. Tr. 15, 57. At the hearing her alleged onset date was amended to December 26, 2000. Tr. 15.

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer filed October 9, 2004 (Docket #8).

[2] Coffman reported working for her husband "off the books" for several years; she became an "official" employee shortly before the August 1995 incident. Tr. 217.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Coffman challenges the ALJ's evaluation of the evidence in establishing her impairments at step three and his conclusions at step five.

In step one, the claimant is not disabled if the Commissioner determines the claimant has engaged in substantial gainful activity. *Id.*; 20 C.F.R. § 404.416.920(b). In step two, the claimant is not disabled if the Commissioner determines the claimant does not have a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.416.920(c). In step three, there is a conclusive presumption of disability if the Commissioner determines the claimant's impairments meet a listed impairment, which the Commissioner acknowledges as severe enough to preclude substantial gainful activity. *Yuckert*, 482 U.S. at 140-1; 20 C.F.R. § 416.920(d).

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. §§ 416.920(e), 416.945; Social Security Ruling (SSR) 96-8p. The ALJ uses this information to determine if the claimant can perform work in the national economy at step five.

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 141-2; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. 416.920(a)(4)(v).

3 - FINDINGS AND RECOMMENDATION

The initial burden of establishing functional limitations rests upon the claimant. If the process reaches the fifth step, the burden shifts to the Commissioner to show that jobs exist in the national economy in the claimant's residual functional capacity. *Yuckert*, 482 U.S. at 141-2; *Tackett*, 180 F.3d at 1098. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. § 416.966.

## THE ALJ'S FINDINGS

The ALJ found Coffman "not entirely credible" and found her ability to work limited by her lumbrosacral strain and "radicular-like" pain syndrome. Tr. 21. The ALJ assessed Coffman's RFC:

> The claimant retains the residual functional capacity to perform sedentary work. She needs a sit/stand option every hour and is precluded from repetitive bending, stooping and squatting.

Tr. 21.

At step five, the ALJ found that Coffman's RFC did not preclude all work in the national economy. Drawing from the vocational expert's testimony, the ALJ identified six examples of work Coffman could perform: ticket seller, cashier, food and beverage clerk, small products assembler, semiconductor assembler and touch-up screener. Tr. 21-22. Accordingly, the ALJ determined that Coffman was not disabled under the Act at any time through the date of his decision. Tr. 22.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d

1190, 1193 (9th Cir. 2004). This court must weigh "both the evidence that supports and detracts from the Commissioner's conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) *citing Martinz v. Heckler*, 807 F.2d. 771, 772 (9th Cir. 1986).  The reviewing court "may not substitute its judgement for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Magallanes*, 881 F.2d at 750; *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Coffman contends that the ALJ failed to reach an accurate RFC assessment because he improperly assessed her credibility, improperly assessed the medical evidence and improperly discredited testimony of two lay witnesses. She also claims the ALJ relied on inadequate vocational testimony in relying upon the disputed RFC assessment.

**1. Coffman's Credibility**

The ALJ found Coffman "not entirely credible." Tr. 17, 21.  He based his credibility finding upon Coffman's inconsistent statements regarding her living arrangements, income and daily activities and a lack of objective medical evidence supporting her alleged impairments.  Tr. 17.  Coffman claims the ALJ failed to properly discredit her testimony.  Coffman's credibility in turn influences interpretation of her medical records and statements given by other witnesses, discussed below.

The ALJ must provide clear and convincing reasons for discrediting a claimant's testimony regarding severity of symptoms.  *Smolen v. Chater*, 80 F.3d 1273, 1283 (9th Cir. 1996). The ALJ's findings must be "sufficiently specific to permit the reviewing court to

conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). In construing his credibility findings, the ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. Additionally, the ALJ may employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms of the claimant. *Id*.

Testimony regarding Coffman's living arrangements is contradictory. On December 26, 2000, Coffman indicated in her SSI application that she was married but separated from her husband, and that she lived alone. Tr. 395. At her November 2003 hearing she testified that she had lived alone between 2001 and early 2003. Tr. 58. She also testified that she received household help from a neighbor for several hours each day during this period. She thought that the neighbor would sign an affidavit supporting this statement. Tr. 397. Coffman's husband, Michael Coffman, testified that they were separated between the "late nineties" until August 2000, and otherwise together with "just a little break up time." Tr. 405. Michael Coffman also testified that he had been living continuously with Coffman since 2000, but then stated that they had not been "together" in 2002. Tr. 405, 406. Michael Coffman testified that the neighbor helped out "once in a while," or once a week Tr. 411.

Coffman's brother, Donald Hildreth, testified that he had been living with Coffman "about two years" at the November 2003 hearing. Tr. 413. In February 2001 Coffman reported that she "lived alone." Tr. 127. Hildreth testified that he helped with household tasks and shopping. He also testified that Coffman naps every day and always used a cane. Tr. 413.

6 - FINDINGS AND RECOMMENDATION

Coffman's application also reported that she had no resources or income. Tr. 58. Testimony regarding Coffman's income does not support this. Her husband's income was approximately $22,000 per year. Tr. 411. At her hearing, Coffman initially did not directly answer questioning regarding her husband's support, but subsequently stated that her husband paid her bills, mortgage and health insurance throughout the period in question. Tr. 394, 397. Coffman also testified that her brother paid Coffman $100 per month in rent. Tr. 398. Her financial resources, though limited, did not amount to zero, contrary to her statement upon application.

The ALJ may question credibility due to inconsistency in testimony. *Smolen*, 80 F.3d at 1284. It appears that Coffman reported inconsistent information regarding when she lived with her husband and her brother, and the financial support and contributions she received from each. Such inconsistency is acceptable support for a negative credibility finding. *Id.*

The ALJ also suggests that Coffman's possession of a fishing license indicates greater activity than Coffman reported. Tr. 19. This is erroneous. At her hearing Coffman stated that she could fish with the assistance of friends once or twice a week. Tr. 402. Regardless, an applicant need not "vegetate in a dark room," in order to be unable to work. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). Possession of a fishing license is not an inconsistent or misleading statement and does not indicate activity comparable to sustained employment.

The ALJ's findings regarding Coffman's credibility regarding her living arrangements and income are sufficiently specific to permit and require this court to conclude they are not arbitrary. *See Batson*, 359 F.3d at 1193. If the ALJ determines that the claimant is not credible, he may reject her pain testimony. *Magallanes*, 881 F.2d at 755. The ALJ, however, did not

entirely reject Coffman's pain testimony, giving her "the benefit of the doubt," and finding her back strain and pain syndrome severe and, thus, according her symptoms "some weight." Tr. 18.

**2. Medical Source Statements**

The medical record begins in 1996 and continues through 2003. Coffman's present claim concerns the period between 2000 and 2003.

Coffman submits that Dr. Rambousek is her treating physician and that his testimony should be given priority. Generally, a treating physician's testimony is given more weight than that of an evaluating or reviewing physician. *Thomas v. Barnhart*, 278 F3d 947, 957 (9th Cir. 2002). There is no bright line rule determining when a doctor-patient relationship becomes a "treating" relationship; one visit may suffice. *Benton v. Barnhart*, 331 F3d 1030, 1037-8 (9th Cir. 2003). Between 1995 and 1998, Rambousek reported managing Coffman's care and referred her to specialists. Tr. 344. He apparently suspended treatment pending payment in early 1998 and his clinic informed Social Security administrative services that she was no longer their patient as of March 1998. Tr. 164, 343. The clinic did not forward Rambousek's clinical notes to the Social Security Administration; the only entries are Rambousek's letters summarizing his treatment.

Rambousek initially suspected Coffman had herniated a lumbar disc. Tr. 345. MRI and x-ray studies conducted in 1995 and 1996 repeatedly revealed normal spinal imaging with no evidence of a herniated disk, fractures, degenerative changes, or other spinal abnormalities. Tr. 167-8, 206-7, 271. In 1996, Rambousek diagnosed lumbrosacral strain, and suggested Coffman could no longer perform physical labor. At this time Rambousek stated that Coffman could maintain sedentary work. Tr. 200-1. In 1996 and again in 1998, Rambousek reviewed his

records and wrote letters summarizing previous findings. Tr. 274-79. The first, in January 1998, stated that, "since her Physical Capacity Exam does not even put her at a sedentary level, I would place her on permanent disability." Tr. 275. The second letter, in June 1998, modified this statement, saying only, "sedentary work may be done, but I am afraid this will irritate her back as well." Tr. 279. Rambousek also suggested Coffman had a herniated disc, contrary to all imaging studies. Tr. 279, 167-8, 206-7, 271. It is acceptable to disregard medical opinion unsupported by objective findings. *See Thomas*, 278 F.3d at 957. The objective medical findings do not support Rambousek's restriction and, notably, the file does not indicate that Rambousek saw or treated Coffman after early 1998.

In October 2000, shortly before Coffman's December 2000 disability application, Coffman's subsequent physician, Dr. Ortega, appeared skeptical regarding her alleged total disability. He declined to find Coffman disabled, suggesting she instead undergo a rehabilitation evaluation and psychiatric evaluation. Tr. 323, 364. Ortega's partner, Dr. Wild, also refused Coffman's request that Wild find her disabled. Wild first reiterated Coffman's subjective complaints, noting they were not based upon objective findings, and subsequently restricted her statement, indicating only that Coffman had been disabled prior to entering Wild's care. Tr. 320, 366, 372. In 2003, Coffman's Kaiser Permanente physician found no clinical evidence of spinal tenderness or hip pain upon examination. Tr. 375.

The ALJ noted Ortega and Wild's reluctance to declare Coffman disabled. Tr. 17-18. In declining to give Rambousek's opinion controlling weight, the ALJ based his reasoning on "evidence showing no significant clinical evidence of a back impairment." Tr. 17. Rambousek is a treating physician for the period between August 1995 and March 1998, but the ALJ's

9 - FINDINGS AND RECOMMENDATION

reasoning correctly found his opinion inconsistent with objective clinical findings in the record. *Benton*, 331 F.3d at 1038; *Thomas*, 278 F.3d at 957.

Coffman next submits that the ALJ should have given more weight to findings and recommendations by reviewing and examining physicians employed by the state Disability Determination Services (DDS). Bill Hennings, a Ph.D. psychologist reviewed Coffman's psychological records, concluding that Coffman presented a pain disorder without organic cause. He also suggested Coffman had a somotaform disorder. Tr. 301. Hennings' report was reviewed by Robert Henry for DDS, who concluded Coffman could adapt to workplace demands. Tr. 294.

The ALJ did not disregard the findings by Hennings and DDS physicians, noting their cumulative opinions. The ALJ correctly specified that reviewing opinions must be well supported by medical evidence; additionally, reviewing opinions are generally accorded less weight than that of examining and treating physicians. Tr. 19. *Thomas*, 278 F.3d at 957. As neither Hennings nor Henry suggested Coffman was disabled, their opinions do not reverse the ALJ's decision.

DDS internists Drs. Eder and Spray also reviewed Coffman's medical record. Tr. 335-341. They suggested Coffman could occasionally lift up to twenty pounds, frequently lift up to ten pounds, sit for about six hours, and was not limited in pushing and pulling. Tr. 335. In restricting Coffman to sedentary work, the ALJ found Coffman's RFC more limited than Eder and Spray. Tr. 20.

Coffman finally submits that the ALJ should have considered the opinion of physical therapist Cathy Parker. Parker examined and treated Coffman twice in November 1996. Tr. 259-267. Parker found Coffman incapable of sedentary work, but her notes suggest Coffman

10 - FINDINGS AND RECOMMENDATION

was not compliant with her treatment regime and Parker consequently discharged Coffman from physical therapy. Tr. 259. Notably, Parker's opinion concerns Coffman's status in 1996, and does not offer a long-term prognosis, much less evidence relevant to the period in question. Tr. 362.

A physical therapist's assessment is considered a non-medical or "other" source. 20 C.F.R. § 416.913(d). The ALJ may reject a non-medical opinion inconsistent with the opinions of other treating or examining physicians if he makes findings setting forth "specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas*, 278 F.3d at 957, citing *Magallanes*, 881 F.2d at 751. The ALJ should have clearly articulated his reasons for omitting Parker's opinion from his analysis, but because Parker's opinion does not correspond with material medical evidence this error is harmless. Rejection of her opinion is permissible. *Id.*

Instead, the ALJ considered the 2001 opinion of physical therapist Dave Dery. Tr. 18. Coffman's attorney referred her to Dery in order to obtain a physical capacity evaluation. Dery noted that Coffman "declined" to do many of the suggested tests and observed "increased pain behaviors." Tr. 358. His analysis concluded that Coffman could perform sedentary work with the opportunity to change positions. *Id.*

### 3.  The ALJ Properly Evaluated the Lay Witness Testimony

Coffman contends that the ALJ improperly rejected the testimony of two lay witnesses. The ALJ has a duty to consider testimony of lay witnesses. 20 C.F.R. §§ 416.913(d)(4); 416.945(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify

11 - FINDINGS AND RECOMMENDATION

regarding the claimant's condition.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).   The value of lay witness testimony lies in their eyewitness observations, which may "often tell whether someone is suffering or merely malingering."  *Dodrill*, 12 F.3d at 918.  The ALJ may not reject such testimony without comment, but he may reject lay testimony that is inconsistent with medical evidence.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Lewis*, 236 F.3d at 512.  If he rejects lay witness testimony entirely, he must give reasons germane to the witness.  *Nguyen*, 100 F.3d at 1467.

  Coffman's husband, Michael Coffman, and brother, Donald Hildreth, testified at her hearing regarding Coffman's pain and restricted daily activities.  Tr. 404-416.  Michael Coffman's testimony focused upon the dates of his separation from Coffman and the extent of his financial support.  Tr. 405-412.  Hildreth's testimony related his observations about Coffman's alleged level of pain and her inability to function in daily life due to this pain.  Tr. 414.

  The ALJ did not reject their testimony outright; in fact he relied upon their testimony in considering Coffman's credibility.  The ALJ noted that Michael Coffman and Hildreth reported only their observations of Coffman's subjective limitations. Tr. 19.  In giving little weight to this aspect of their testimony, the ALJ suggested that these third party reports are not consistent with Coffman's medical reports.  Tr. 19.

  The ALJ must consider lay testimony in evaluating symptoms, but lay testimony alone cannot establish a medical diagnosis.  *Lewis*, 236 F.3d at 511-12.  The ALJ may reject lay testimony inconsistent with the medical record.  *Id.*  Hildreth's observations that Coffman required daily naps and could not complete a shopping expedition are not consistent with the medical record showing that she could walk a half mile daily, that she walked her dogs, and that

12 - FINDINGS AND RECOMMENDATION

she could garden, albeit in a restricted fashion. Tr. 285, 414. The observations of Michael Coffman and Hildreth do not establish that Coffman's behavior is medically necessary rather than self-limiting. The ALJ did not reject their testimony outright, and so is not required to give germane reasons for rejecting their testimony. *Nguyen*, 100 F.3d at 1467.

**4. Restrictions in Questions to Vocational Expert**

Coffman submits that the ALJ erred in omitting the limitations identified by Dr. Rambousek in his hypothetical questions to the vocational expert (VE). The ALJ must include all limitations supported by substantial evidence in his hypothetical question to the VE, but he may exclude unsupported limitations and disregard VE testimony based upon unsupported limitations. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

The ALJ asked three hypothetical questions. In the first, he cited the limitations found by Drs. Eder and Spray, including carrying twenty pounds occasionally and ten pounds frequently, an hourly option to sit or stand, and no repetitive bending, stooping or squatting. Tr. 418, 420. The second hypothetical question restricted the hypothetical worker to sedentary work, lifting ten pounds occasionally and five pounds frequently, with no repetitive bending, stooping or squatting. Tr. 420. A third hypothetical question included inconsistent work attendance due to pain and an additional one hour afternoon break to recline and relieve pain. Tr. 424. Because the limitations encompassed in the third question were not supported by the record, the ALJ did not err in excluding them from his decision. *Osenbrock,* 240 F.3d at 1163-5; *Magallanes,* 881 F.2d at 757. Coffman claims these scenarios did not take into account limitations described by Michael Coffman and Hildreth relating to her pain and fatigue. Because

13 - FINDINGS AND RECOMMENDATION

the ALJ also did not find these additional limitations supported by the medical record, he did not err in excluding them from his hypothetical questions to the VE. *Id.*

The forgoing discussion shows that Coffman has failed to show any error in the RFC assessment. The evidence in the medical record affirms the ALJ's finding that Coffman is not entirely credible, that her reports of pain are exaggerated, and that her pain is largely functional without dispositive effect on her ability to work. The ALJ appropriately included all limitations identified in Coffman's RFC assessment in his hypothetical questions to the vocational expert.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

## **CONCLUSION**

14 - FINDINGS AND RECOMMENDATION

The Commissioner's decision that Coffman did not suffer from disability and is not entitled to benefits under title XVI of the Social Security Act is based upon correct legal standards and supported by substantial evidence. I recommend the Commissioner's decision be affirmed and the case dismissed. A judgment should be prepared dismissing this action with prejudice.

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due May 3, 2006. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

A party may respond to another party's objections ten days after service of a copy of the objections. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or on the latest date for filing a response.

DATED this 19th day of April, 2006.

     /s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge

15 - FINDINGS AND RECOMMENDATION